Even with the presumption of correctness attached to state courts' finding of credibility, we have a situation where a 16-year-old boy was awakened in the middle of the night, arrested, taken to a police station, and interrogated for over three hours by two detectives from midnight to approximately 3 o'clock a.m. without a parent or a counsel present, without any food or drink being offered. And the petitioner denied his involvement in the murder. However, the interrogation continued. The police officers were going to interrogate the minor until he told basically what they wanted to hear. There was no offer of rest or a break during the interrogation. Basically, there was... If I were in the state court, I might see this thing slightly differently. But this is here with a standard of review that's quite limited, isn't it? That's correct, Your Honor. However... Why don't you help me get around that? It's still the totality of the circumstances should apply in determining whether an admission or a confession was voluntary. We have opposing statements. The officer testified, and Mr. Taylor testified. And the state judge said, I believe the officer. I don't believe Taylor. That's correct, Your Honor. However... In order for you to succeed, we'd have to say, despite the presumption that applies to all trial court findings, and specifically the even heavier presumption that applies to state court findings of fact, we believe that the Superior Court judge got it wrong. He should have believed Taylor. He should have disbelieved the officer. That's where it gets volatile, doesn't it? That's correct, Your Honor. However, even if we apply that presumption of correctness, the facts don't change. Just because the state court decides to believe the detective doesn't mean that the 16th the Petitioner was not 16 years old. It doesn't change... But that was before the state court. In other words, the state court had everybody in front of him. He saw the defendant. He saw the officers. He knew the age of the defendant. He knew how long it took. He knew that the kid said he went out and called the lawyer right afterward, told the lawyer the same story that he was telling the judge. All of those things were before the state court, and the state court had to make a factual decision based on what he saw and heard, and he did. And the defendant lost. That's correct, Your Honor. However, the legal conclusion of... Do you want us to make a finding that it violates federal law to ever interrogate a 16-year-old at 3 in the morning? Is that the rule that you want? Well, he was put in a coercive environment. That's what we are arguing. I think that's the trial. The state court's found, obviously, that it wasn't a coerced confession. That's a factual finding. If you're saying that based on these facts, we need to rule as a matter of law, then you're asking us to find that there was some clearly established federal law that you could never do an interrogation of a 16-year-old at 3 o'clock in the morning when he's just gotten out of bed. And I don't know where that law is. We would respectfully defer on that point. The state court can make findings of fact, whether the defendant was how old, whether the situation that he was placed in was such-and-such, whether it was 3 a.m., or whether there were two officers interrogating the minor. Those are factual determinations. But the conclusion that the Court came to, whether it was a coercive or voluntary confession, is a legal conclusion, which this Court has to review under the totality of the circumstances, given the factual findings made by the state court, whether- So we assume the facts- That's correct, Your Honor. As found by the state court. That's correct, Your Honor. We assume that he got and read the Miranda warning card before they started talking- That's correct, Your Honor. About midnight. And then that it was reiterated once again, once he was on tape, and he listened carefully, and he agreed to it at that point. That's correct, Your Honor. I think we would like to separate- And that in between, nothing happened. There was no putting the fist in the face with a ring, with a 187. That's not true. They didn't draw lines. That's not true. He didn't ask for his mother. That's not true. He didn't ask for a lawyer. That's not true. We have to assume those facts like that. That's correct, Your Honor. If we attach the presumption of correctness- Are you making an Edwards claim? I did not see an Edwards claim. Maybe I misread it, but I was a little surprised. A what claim, Your Honor? Edwards. Edwards claim? Edwards. You don't know Edwards? If a suspect asks for counsel, the interrogation must stop. In this case- If a suspect makes an unequivocal request for counsel, the interrogation must stop. Right. In this case, he did not. Well, giving the presumption of correctness to the State court's finding, we would have to say that the Petitioner did not request- Ah, but the State court did not make a finding on that. The State court made a finding that- Well- About the Miranda warnings and said that the confession that in fact he was presented with, there was no finding made by the State court as to whether or not the defendant asked for a lawyer or his mother, and the interrogation would thus continue. That's an area where there was no finding by the State court, which sort of surprised me that you didn't raise an Edwards because there is a situation where the State court has not found the facts. Well, in this case, it's very difficult because the State court did not make specific findings. It made a broad statement as to the credibility of the detective and sort of accepted everything that the detective stated. And the statements that he made were that the Miranda rights were read and that the Petitioner understood the rights and that he waived and decided to speak to the detective. So if we grant the presumption of correctness to the State court's finding, then we would have to assume that the Miranda rights were read, that the Petitioner understood the rights, and that he voluntarily waived without asking for an attorney. It doesn't matter. Even if you waive counsel. Let's say you waive counsel. You start talking and they say, I've changed my mind. I now want a lawyer. Questioning must stop. So those are the Edwards. Edwards is really quite different and more powerful tool than Miranda. And I was looking here in vain for the Edwards claim. You did not raise Edwards here. You didn't raise Edwards in the State courts, I gather. No. The reason why I didn't raise it, because there was no evidence to show that the Petitioner requested for an attorney. Oh, sure. There was his testimony. Right. However, if his testimony was discredited, then — Well, I don't want to tell you how to practice law, and there may be lots of reasons, good and bad reasons. The point is, what you're telling me is Edwards is not in this case. That's correct, Your Honor. The U.S. Supreme Court has long recognized that a minor is more susceptible to police coercion. As such, a greatest care must be taken to assure that the confession is voluntary. And in this situation, even if we take all the facts that were there, the minor was placed in a coercive situation. He was being interrogated in the middle of the night without any parent or counsel. The detectives could have waited until after the morning with providing him opportunities to speak to him. Those are certainly things that they could have done and maybe things that they should have done. But are they things they were required to do? Did they violate a clearly established right of your clients by failing to wait until the morning, by failing to let him get some rest? Maybe there's something we missed here. Well, we have a similar case in Haley v. Ohio, which is a Supreme Court case. Similar facts were involved. A 15-year-old boy was awakened in the middle of the night, taken to the police station, interrogated for five hours. He finally signed a confession. And in that case, the U.S. Supreme Court held that the age of Petitioner, the hours when he was grilled, the duration of his quizzing, the fact that he had no friend or counsel to advise him, the callous attitude of the police toward his rights combined to convince the Court that this was a confession wrung from a child by means which the law should not sanction. And I would submit that. So you think Haley is your clearly established Supreme Court law that we can apply? That's correct, Your Honor. We would argue that. For equitable purposes. You say 1948 is the Supreme Court's established law, and we can now apply it on Habeas. That's correct, Your Honor. We would argue that that case is on point, that the State court's decision violated that Federal law, or in the alternative, the State court's decision was unreasonable application of the Federal law based on Haley. Okay. And you don't have other votes for me, sure? No, Your Honor. With respect to the ---- You didn't raise an Edwards claim in the State court either, so you haven't exhausted an Edwards claim. That's correct, Your Honor. I was appointed to represent the Petitioner on an appeal with specifically the merits, not the merits, the motions panel decided that the issue on appeal would be on this one issue. On appeal before us. Excuse me? On appeal before us. Yes, that's correct, Your Honor. The motions panel granted certificate of appealability with respect to simply this issue, which was whether his confession was voluntary or not, and whether it was in violation of Miranda rights. That was the sole issue that we were granted on the COA to bring this Court. As I understand the recitation of the facts here, you're saying that the Petitioner testified he asked for a lawyer and his mother after the question began, after the waiver of Miranda rights, and the deputant testified that he never asked for the lawyer. That's correct, Your Honor. And then the judge makes the determination that I believe everything the detective said. That's correct, Your Honor. Okay. So when we attach the presidential correctness, then we would have to say that those things didn't happen. With respect to the prejudice, the main issue at trial was identity. And the Court of Appeals, State Court of Appeals, makes it clear that the identity was at issue. The Court of Appeals recognized that the two eyewitnesses that testified at trial could not positively identify Petitioner. Now, the government attempts to argue, claim that there was one witness who overheard Petitioner saying that I killed the fool, but that was made to the – that statement was made to the police, not at trial. At trial, that witness stated, testified that she did not see who made the statement. She did not see who urinated on whom. So there was really, without the confession coming in, there was no evidence to identify Petitioner. Did he find any gun residue on – powder residue on his hands then, as far as the record is concerned? Or apparently – did he shoot under his arm? Well, that was according to the confession, Your Honor. According to his confession that he shot – So there would have been powder residue on his hands, except for maybe the washing of the urine. I don't know how effective that is. But also on his clothes. Was there any evidence of clothes with gun residue? No. Powder residue presented at trial? No. There was no other evidence, other than the confession, to really tie Petitioner as the perpetrator. Did your client testify at trial? Excuse me, Your Honor? Did he testify? At trial? I don't believe so. I didn't get what the scenario was. He testified he shot under his arms. That was the confession, Your Honor. Okay. That was the confession. But then there was some other testimony that after those shots were made, the victim was still running after him? Or were those the shots that, it's clear from the evidence, felled the victim? Yeah. I had a hard time understanding what the facts were. The facts are somewhat sketchy because the eyewitnesses were giving from different angles. There was testimony saying that he chased after one guy, and after that he came after another guy, and then he fell after that. Yeah. The victim was chasing people. Right. The victim was chasing people. Right. And he fell after chasing the second guy. Now, if you put that together with the confession, then it appears that the defendant was running away, was the second guy, and this guy came after him, and he shot under his arm and shot him. But, however, without confession, there's no clear evidence linking the petitioner to the crime. Okay. Thank you. Your Honor, please. Good morning. Deputy Attorney General Deborah Chuang, on behalf of Thomas Maddox, Interim Director. The district court in this case properly determined that the California Court of Appeals' rejection of petitioner's claims was not contrary or an unreasonable application of clearly established federal laws set forth by the Supreme Court. The district court also properly determined that petitioner failed to establish that the state court's decision was based on an unreasonable determination of facts in light of the evidence presented at the state proceeding. The standard of review for denial of behaviors petition is de novo, but the voluntariness of the confession is no longer reviewed de novo. It's reviewed under ADPA, and it must be reviewed with a deferential review. Petitioner cites in his reply brief Van Tran, but as this Court is well aware, the Supreme Court determined in Andrade v. Lockyer, which was cited in Apelli's brief, that the Van Tran two-stage inquiry does not accord proper deference to the state court adjudications. And did I get it right? Did the detectives actually say that he never asked for a lawyer? That is correct, Your Honor. And I do believe that Petitioner's counsel, trial counsel, at the suppression hearing did attempt to make an Edwards claim. But clearly, if the detective was not – if the detective was believed and Petitioner was not believed, then the state court did not make a finding on that. It did not make a finding on the question of either whether the Petitioner asked for his mother or whether he asked for his lawyer. Your Honor, I would respectfully disagree, because I believe that the trial court in that matter said that Petitioner's interrogation was not in violation of Miranda. And the basis of Edwards is, at the very end, a violation of Miranda. If you assert your right to counsel after you've been Mirandized, you would still have some type of violation of – it's under the umbrella of Miranda, some courts have referred to. The state court's findings – I have no idea what you have said. Well, Your Honor, I – What you're saying is when he said there's no violation of Miranda, he also said there's no violation of Edwards? Essentially, Your Honor, I believe that by stating in combination – Well, let's say I don't agree with you on that. Let's say I see Edwards and Miranda as very different. You can invoke Miranda and then invoke Edwards, and the questioning has to stop. Certainly, Your Honor. Right? Or if you invoke Edwards and they give you Miranda warnings and you make a confession, the confession is no good, no matter how good the Miranda warnings were, because you invoked Edwards, and at that point, questioning has to stop. Right? That's correct, Your Honor. So the two things are really quite different. And I don't see any reference to Edwards here. I see no reference in the Superior Court judges' findings of any – in any way addressing the question of when Petitioner invoked his right to counsel and whom he believed on that point. Now, I have a ruling in front of me, and maybe if you can point me to something in that ruling. It's only about 12 lines long that persuade me otherwise. Your Honor, I believe that the Superior Court judges' statement, excerpts of record, page 68, line 17, I am a fact finder first, and I have to decide to say who I believe. I conclude in this case that I clearly believe beyond a reasonable doubt Officer Rameen and not the testimony of the defendant in this case. I think that that essentially forecloses. That means she believes him in every particular. Yes, Your Honor. I believe so. What about the next sentence? Not only because it is a defendant in this case, but for other reasons. What does this phrase, not only because it's a defendant, mean? Does – is a district – is a trial judge attaching some diminished credibility to defendant because he is a defendant? No, Your Honor. I believe that what the trial judge was trying to state was really that the trial judge was applying a totality of the circumstances test. Well, I understand. But he says one of the things he takes into account in making the credibility determination is this guy is a defendant. Is he giving – saying I'm going to give more weight to the police, I'm going to give less weight to the defendant? What could this mean? Well, Your Honor, I believe that – It turns out other factors, but this is one of them. And I believe that the Court is entitled to find, you know, put a little bit less weight on the defendant's self-serving statements, which they often do at the trial level. You know, the State court's findings of fact underlying the determinations are entitled. Because? It's entitled to give less weight because? They often – well, they often do because they are self-serving statements, keeping in mind that there is normally no – And police statements are not? Your Honor, I believe that courts take into account police statements as well. And I believe that in this case, the defendant's – the Petitioner's testimony  You know, I read it, and I found the officer's testimony to be the credible one, to tell you the truth. But I'm – why was he interrogated at midnight? Between midnight and 3 a.m.? Your Honor, that's a question that I'm not really sure what the answer is. Is it appropriate? I mean, this was not a situation where they had a suspect, and they either had to let him go or keep him so they didn't ask him questions right there and then. They had no reason to keep him. There was an arrest warrant, right? Yes, Your Honor. So this suspect was safely in custody, and they didn't have to keep saying, well, you know, if you don't keep asking questions, you leave. Why is it appropriate for police officers to spend three hours, before they even turn on the tape, in a small room with a child of 16 years of age, without notifying his mother, and without – with no evidence of what happened in that room, other than the mutual words of the participants? Which, of course, police are always going to have a big advantage, because they're institutional players and know how to testify, and everybody believes, oh, well, they must not have anything at stake. Was there some necessity for this? Regardless of whether or not there was a necessity, as the district court found – Excuse me. I've asked you a question. Yes. I've asked you a question, and you've proceeded to say, well, never mind, I don't – No, I'm sorry. Okay. I asked you a question. Was there a necessity for this? Possibly. They executed the arrest warrant after 1130, and they – When was the arrest warrant obtained? I'm not certain, Your Honor. Could it have been obtained much earlier in the evening? I'm not certain. Let's say it had been obtained, let's say, at 8 o'clock in the evening, but wasn't served until midnight. Would that bear on the situation at all? I don't believe so, Your Honor. I think it's appropriate for police to come in and pull people out of their beds and then subject them to interrogation at the point when they are the most vulnerable, when they're sleepy, when they're scared, and then for three hours, take three hours before they turn on the tape recorder until they've got them good and worked over and they've got them ready to confess. What happened during those three hours that the police were so worried about turning on the tape recorder? Your Honor, I don't necessarily read the record as being the police being worried about what would come out. Well, why then not turn on? If you're going to do that, you walk in the room, you turn on the camera, okay? And then whatever happens, happens. But nothing like that happened. Three hours out in there with this kid who's 16 years old. They don't notify his mother. They don't provide him a lawyer. They could wait until morning, until he's awake. They could wait. He's not going anywhere. What necessity, why is it appropriate for detectives to be doing this? Well, Your Honor. Is this standard procedure in California? I don't know, Your Honor. But all of those factors that you have mentioned are taken into account in the totality of circumstances test. And those were presented to the State Court. Well, maybe. Maybe. But maybe there were unreasonable implications in light of Haley. Your Honor. A 1948 case where Justice Douglas got his dander up pretty good about some similar tactics employed 50 years earlier. Haley is, Your Honor, substantially different. And, by the way, Haley v. Ohio, in the greatest care description of In re Gault, were relied upon heavily in the dissent of Fair, but obviously not found to be applicable by the majority in Fair, which was decided 31 years after Haley. In Haley, the defendant was not informed of his right to counsel and was simply presented a prepared confession that began with a statement that he could make a statement or not at his decision, that it could be used against the trial, against him at trial, and that he was under no duress. He then signed the statement. Petitioner here, in contrast, was not only advised once, but was advised three times, verbally, written, and on the record. If you believe the policeman, he gets out of the room. As soon as he gets to a telephone, he calls a lawyer and tells him these facts. He says, look, I said it. I didn't do this. I was not involved. They wouldn't let me near a telephone. They wouldn't get me to my mother. They kept waving the ring in front of my face. They kept drawing these lines. It's not something that he created, fabricated after weeks of thinking about it or days of thinking about it. As soon as he gets to a telephone after the confession, 4 in the morning, he tells these facts to a lawyer, who then comes and testifies to it in court. Yes, Your Honor. And that was presented at the suppression hearing, and a superior court judge found that to be not credible. He didn't make any credibility finding as to Mr. Nunn. He did not even address the credibility of the lawyer. Mr. Lamb? No, I'm sorry. Attorney Close, Your Honor. Very good. Attorney Close. Arthur Close. Not a word. Not a word on the credibility of Arthur Close in the superior court's ruling. The superior court found Officer Ramin's testimony to be totally credited. And going – I just wanted to touch on also that Petitioner argued in his reply brief that there was no evidence to show that he had a criminal record or had any experience with the criminal justice system. This is – I respectfully disagree with that. It's clear from the record that all the parties understood that Petitioner had experience with the criminal justice system. At Excerpts of Record, page 12, Detective Ramin referred to Petitioner's juvenile package. At Excerpts of Record, page 57, Attorney Close, who was the attorney that was called by Petitioner, testified that he knew Petitioner from clean-up the community, graffiti clean-up, the probation department, and a gang baseball team. And indeed, the California court of appeal did make reference to Petitioner's record of arrests. Although he had no prior convictions, he had three verified prior arrests and one disputed arrest for assault with a firearm. Like the defendant – this case is substantially like Fair. Like the defendant in Fair, who was 16-and-a-half years old, with considerable experience with the police, Petitioner here was 16 years old and had some experience with the police. And in any event, any error in admitting his confession was harmless in regret. Petitioner's confession was not a full-blown confession. He first claimed that the victim was chasing after him and that – and had threatened to kill him, and then he said he didn't aim and that he was shooting underneath his arm just twice to scare the victim, and he didn't even know he hit the victim because he claimed the victim was running around. And actually, I don't think – That was all in the confession. Yes, Your Honor. He didn't testify to the crime. Yes, but put aside the confession. What you're trying to tell us is, oh, the confession doesn't matter anyway because this is all – the prosecution case was so solid anyway. Yes, Your Honor. So you can't very well rely on the confession in making that showing, can you? Well, there is a distinction. Arizona v. Fulamonti – Fulamonti, the Supreme Court does make a – Fulminante. Yes. It does make a distinction between full-blown confessions and, you know, not-so-full-blown confessions. And also, the other evidence – given the other evidence – Well, you're trying to show that this is – this is harmless, that we don't need to worry about the confession. It's harmless. You can't rely on it in showing harmlessness. You have to present the government's case without reference to what came out. Certainly. And there was other evidence. In this case, Vanila, who – Not certainly. You were doing exactly what you're not supposed to do. This is why Judge Vastani called you on it. I'm sorry? You were bringing things in that came from the confession. The issue is whether or not the introduction of the confession would have had a substantial and injurious effect. And so in that perspective, you do have to somewhat, as the Supreme Court pointed out in Arizona v. Fulamonti, you do have to somewhat look at whether it's a full-blown confession. And that's the only part I'm trying to bring out. But looking at the other evidence, Vanila testified that Petitioner – it could have been Petitioner that made the statement that someone had been killed and said, peel my hand. It could have been Petitioner. Understandably, she backpedaled from her prior statement to the police officer. She backpedaled because she knew Petitioner. Her prior statement to the police was more damaging. She actually said Petitioner stated, I think I killed the fool, and that after Petitioner and Rodriguez entered the van, that Petitioner – someone urinated on Petitioner's hands. And that was brought into the trial through the testimony of Detective Rameen. There – what the Supreme Court – But then at trial, she said she wasn't sure who urinated on whose hands. She – yes. At trial, she backpedaled. What this comes down to is it's – it was a credibility contest that was – was explicitly found in the State's favor. You think with all this backpedaling and forth, you think having him – his taped confession didn't – didn't make any difference? Is that what you're trying to pursue? No, Your Honor. Also, there were the eyewitnesses who did testify as to the motive, which was stealing the bike. The court – That testified was – it was the – it was Petitioner? No, Your Honor. Nobody – Nobody identifies Petitioner. There's evidence as to motive in stealing the bike, and there's equivocal evidence about Petitioner talking about, I killed him, and equivocal evidence about who it was who had his hands urinated on. Well, Your Honor, I believe it's – But there's nothing really specific to Petitioner except the confession. Isn't that what comes down to?  I believe, Your Honor, that Vanila did say that somebody in the car at trial, she did say someone said – mentioned something about someone being killed, and that it may have been Petitioner, but then it was followed up by Detective Romine, who said her prior statement was that Petitioner stated, I killed the fool. I don't think it's as equivocal, and certainly that was something that the – that would, in view of everything, show that his confession was not a substantial injurious effect on the jury's verdict. I guess whoever tried the case didn't think it was so easy. They decided to put the confession anyway. They probably just thought it was superfluous. Well, Your Honor, I believe that it was properly admitted evidence, and there was no reason why to take it out. I understand you do that, but you're now trying to persuade us it didn't make much difference anyway. They just sort of put it in for good luck. Which prosecutors, I guess, do do sometimes. The State Court of Appeal found under the totality of circumstances that the evidence found credible by the trial court supported the determination that the waiver and the confession were voluntary. The district court recognized this and found that the court of appeal, State Court of Appeal, was – rejection of Petitioner's claim was reasonable, and we request that the district court's judgment be affirmed. Unless there are any other questions, I would be prepared to submit all the briefs. Thank you. Thank you. Yeah. Out of time, would you like a minute for rebuttal? If you'd like a minute, but don't feel like you have to take it. Just a minute, Your Honor. With respect to Fair case, it's totally distinguishable. That case dealt with whether the minor felt that he was under custody or not, and whether the Miranda warnings were given, and given the context of the situation, whether the minor, 16 and a half years old, would have felt that he wasn't free to leave. It did not deal with the voluntariness of confession issue. Thank you. The case is argued. We'll stand for minutes.
judges: Kozinski, Tg Nelson, Restani